UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| RIGOBERTO MORENO, | ) No. SA CV 13-01424-VBK |
| Plaintiff, | ) MEMORANDUM OPINION |
| v. | ) AND ORDER |
| | ) (Social Security Case) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") failed to

                properly consider the opinion of Dr. Rick Pospisil;
        2.      Whether the ALJ failed to properly consider radiculopathy of
                the lower extremities;
        3.      Whether the ALJ improperly applied the Medical-Vocational
                Guidelines;
        4.      Whether the ALJ committed legal error in failing to properly
                consider Plaintiff's testimony; and
        5.      Whether the ALJ failed to properly consider Plaintiff's
                ability to read and write English.
(JS at 2-3.)

        This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

                                        I
**THE ALJ PROPERLY CONSIDERED THE CONSULTING OPINION OF DR. POSPISIL**

        In Plaintiff's first issue, he contends the ALJ failed to properly consider the opinion of Dr. Rick Pospisil. Initially, the Court first notes that Plaintiff mischaracterizes Dr. Pospisil as a treating physician. (See JS at 4.) Dr. Pospisil performed an examination and provided what he denominated to be "consulting physician's evaluation and report under the future medical." (AR 777.) Dr. Pospisil evaluated Plaintiff once, on May 20, 2009 "for the purpose of consultation under future medical." (AR 778.) Consequently, the reference by both parties to the law concerning the opinion of treating physicians is misplaced. Nevertheless, as discussed by the

Ninth Circuit in <u>Lester v. Chater</u>, 81 F.3d 821, 829-830 (9th Cir. 1995), where the opinion of a consulting physician is contradicted by the opinions of other examining physicians, then that opinion may only be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record."

It is the ALJ's duty to resolve conflicts in medical testimony by analyzing the evidence presented in the record. Thus, the Court's focus here is whether the ALJ provided specific and legitimate reasons supported by the record for rejecting the opinions of Dr. Pospisil.

In his Decision (AR 17-27), the ALJ summarized the opinions of various examining and non-examining physicians. The discussion as to Dr. Pospisil is somewhat extensive. After reviewing Dr. Pospisil's assessed functional limitations, the ALJ stated he "found no significant abnormalities, functional limitations, and diagnoses, as either the conditions mentioned were stable and/or well controlled." [AR 24, sic.]

Plaintiff points out that the ALJ utilized the same or a similar expression to describe the opinions of various physicians whose reports are contained in the record. Dr. Pospisil opined that Plaintiff would miss more than three days of work per month (AR 788), which the testifying vocational expert ("VE") indicated would render Plaintiff incapable of any work. (AR 85-86.)

As noted, the ALJ summarized in some detail the conclusions of other examining physicians. One such report was completed in 2007 by Dr. Ross, who performed an orthopedic consultative examination ("CE") at the request of the Department of Social Services. (AR 22, 569-572.) As noted by the ALJ, Dr. Ross found that Plaintiff's gait was normal, as was his heel to toe pattern, and he did not need to use an

assistive device to ambulate. The cervical spine was within normal limits, thoracolumbar range of motion in forward flexion was limited, but Dr. Ross observed that Plaintiff expended limited effort on range of motion testing. There was moderate subjective tenderness in his lower lumbar spine and the bilateral paraspinal muscles, but no spasm was noted. There was subjective tenderness to increased ranges of motion. There was a negative straight leg raising test (as also found by Dr. Pospisil), but range of motion testing was close to normal. Dr. Ross concluded by indicating that Plaintiff required no further musculoskeletal treatment and noted that he had a stable status. He opined that Plaintiff can frequently lift and carry 25 pounds and occasionally lift and carry 50 pounds; that he has no sitting, standing, walking or extremity functional limitations; that he does not need to use any form of handheld ambulatory assistive device or any form of orthosis. (AR 22.)

The ALJ cited other reports of examining professionals which indicated findings more supportive of those of Dr. Ross than those of Dr. Pospisil. These include David Greenberg, D.C., who noted no functional limitations and indicated that Plaintiff responded well to passive therapies. (AR 21, 339.) As to non-examining physicians, the ALJ relied upon a functional capacity assessment dated October 19, 2007 from State Agency consultant Dr. Zheutlin, who rendered an opinion that Plaintiff was able to perform medium work. (AR 22, 574-578.)

The ALJ also cited to evidence relating to the period of September 2007 to February 2008, from Dr. Bond, D.O., and for August 25, 2007 to February 3, 2008 from Dr. Greenberg, D.O., Qualified Medical Examiner. (AR 23, 625-628, 629-631.) As to their conclusions,

4

the ALJ found no significant abnormalities, functional limitations, and diagnoses.

Plaintiff complains that the ALJ must do more than simply summarize other medical opinions in order to reject one of them. (JS at 9.) Plaintiff is essentially correct, but in this case, the ALJ did provide reasoning for rejecting Dr. Pospisil's opinion. This may have been somewhat inarticulately expressed (e.g., "I found no significant abnormalities, functional limitations, and diagnoses, ..."), but aside from semantic problems, the ALJ did adequately summarize the opinions of consulting and non-consulting doctors and medical sources which substantially contradict the functional limitations assessed by Dr. Pospisil. Also, Dr. Pospisil performed what appears to be an extremely brief physical examination. It contains few actual limitations or descriptions of testing of Plaintiff's thoracic or lumbar spine. Instead, Dr. Pospisil provided general observations. (AR 781.) Also, while Dr. Pospisil did provide some objective results as to Plaintiff's lumbar active ranges of motion, and reported a negative straight leg raise, limitations in range of motion were also found by Dr. Ross, who opined that Plaintiff was expending less than maximal effort. ("Limited effort is rendered on range of motion testing." [AR 570.])

In sum, the analysis which the ALJ performed went far beyond simply reciting or summarizing the opinions of various physicians and then just picking one of them; rather, in addition to the summaries of reports (with which Plaintiff does not quibble), the ALJ pointed out that the functional limitations assessed were out of line with the examination results. In doing this, the ALJ performed a valid analytical task. The Court thus concludes that the ALJ did, in fact,

5

provide specific and legitimate reasons supported by substantial evidence in the record, for the rejection of Dr. Pospisil's opinion as to Plaintiff's functional limitations.

## II
### THE ALJ DID NOT ERR BY FINDING NO EVIDENCE OF RADICULOPATHY OF THE LOWER EXTREMITIES

In determining Plaintiff's severe impairments, the ALJ found degenerative disk disease of the lumbar spine "without radiculopathy." (AR 19.) Plaintiff asserts the ALJ erred in making this finding because it is not supported by substantial evidence.

In making this argument, Plaintiff points to testimony of the medical expert ("ME") at the first hearing, concluding that the ME testified that Plaintiff was having some radiculopathy. (AR 95.) This interpretation, however, takes the testimony of the ME totally out of context. Specifically, in responding to the ALJ's question regarding the extent of Plaintiff's medically determinable impairments, he stated, in pertinent part, the following:

> "I point out a lack of medical evidence over the past year and a half. The last evidence is that of a orthopedic consultative examination in September of 2007, in Exhibit 6-F. Prior to that, there were a number of orthopedic evaluations by Dr. Kim and an [INAUDIBLE] medical evaluation by Dr. Woods in April 2006, in Exhibit 3-F. All of which, in my opinion, do not point to significant residual radiculopathy. And I do not see either a meeting or equaling of listing 1.04A." (AR at 93.)

Later in the testimony of the ME, when questioned by Plaintiff's lawyer, he indicated that going back to 2002, the medical evidence showed that at that time, Plaintiff had some right lower extremity radiculopathy. (AR 95.)

While Plaintiff argues that the ME offered no testimony as to improvement, clearly, the ME acknowledged that there was evidence of some radiculopathy in 2002, but that by the period of a year and a half prior to the hearing, there was a "lack of medical evidence" showing any "significant residual radiculopathy." (AR 93.)

Moreover, as noted with regard to discussion of the first issue, the ALJ relied on the CE of orthopedic examiner Dr. Ross, in 2007, who concluded, after examination, that there was "no sign of a radiculopathy, ..." (AR 572.)

The ALJ's conclusion that Plaintiff's back condition has improved was based on a comparison of MRI scans. He specifically made the following observation:

> "In his initial MRI, it showed moderate sized disk bulge, but in Exhibit 30F, an MRI dated August 14, 2009, it demonstrated significantly smaller bulges." (AR 25.)

Consequently, there is substantial evidence supporting the ALJ's conclusion that Plaintiff did not demonstrate any measurable radiculopathy in his lower extremities, and for that reason, the Court rejects Plaintiff's second issue.

**III**

**THE ALJ IMPROPERLY APPLIED THE MEDICAL-VOCATIONAL GUIDELINES**

In determining Plaintiff's residual functional capacity ("RFC"),

7

the ALJ in large part relied upon a psychological consultative evaluation ("CE") performed on October 22, 2007 by Dr. Brawer (AR 579-584) and, in the Decision, adopted Dr. Brawer's conclusion that Plaintiff is able to learn simple, repetitive tasks and could perform some detailed, varied or complex non-verbal tasks. (See AR at 23.)

On the exertional level, Plaintiff's RFC was found to permit the full range of light work. (AR 20.) Therefore, the question comes down to whether or not Plaintiff's non-exertional (mental) limitations, as found by the ALJ, either significantly erode the occupational base, or, as in this case, permit use of the Medical-Vocational Guidelines ("Grids") as a "framework for decision-making." (AR 26.) Utilizing Grid Rule 202.18, which describes an individual whose education is limited or less, and whose previous work experience is skilled or semi-skilled with skills not transferable, a finding of not disabled is called for.

To uphold the ALJ's Decision, the Court would have to agree with the Commissioner's contention that Plaintiff's limitation to simple, repetitive tasks amounts to a ability to perform unskilled jobs, and thus, inferentially, does not erode the occupational base.

The first problem with the Commissioner's argument is that was no specific limitation in the determined RFC to unskilled work.

The Commissioner's regulations provide precise guidelines for the evaluation of mental impairments. Impairments concerning limitations in social functioning are evaluated according to a five-point scale: none, mild, moderate, marked, and extreme. (See 20 C.F.R. §404.1520a(c)(4).) Further, if impairments in social functioning are determined to be either "none" or "mild," the conclusion is that this impairment is not severe. (See 20 C.F.R. §404.1520a(d)(1).)

8

1    20 C.F.R. §404.1521a defines a non-severe impairment as one which "does not significantly limit your physical or mental ability to do basic work activities." Thus, it is clear that an individual who has a moderate limitation in the area of social functioning has a severe impairment, which significantly limits his mental ability to do basic work activities.

Neither party cites the Ninth Circuit's decision on Desrosiers v. Secretary of HHS, 842 F.2d 573, 576-77 (9th Cir. 1988), in support of their position. While Desrosiers does not preclude application of the Grids in cases presenting non-exertional limitations, it holds that, "The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by her exertional limitations." (846 F.2d at 577.) Although Desrosiers addressed cases involving both exertional and non-exertional limitations, it is clear that Plaintiff's non-exertional mental limitations, by definition, significantly limit the range of work which he is capable of doing, because the impairment is classified as severe under the regulations. Plaintiff's case, therefore, is one in which the Grids are inapplicable. In order to factor in Plaintiff's severe mental impairment, the assistance and testimony of a vocational expert ("VE") was clearly required. (See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). Without the assistance of a VE, the ALJ would be unable to factor any limitation in the potential occupational base related to Plaintiff's mental impairment.

The Commissioner puts forward the proposition that since the ALJ concluded that Plaintiff could perform unskilled work, and the Grid contemplates only unskilled work, the Grid therefore completely describes Plaintiff's abilities and limitations. In fact, Social

Security Ruling ("SSR") 85-15 does not support this proposition. In discussing mental impairments, for example, the regulation notes that, "The decision maker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work."

SSR 85-15 also makes note of the following:

> "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. <u>A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base</u>." (Emphasis added.)

In Plaintiff's case, the ALJ, as noted, relied upon the psychological CE of Dr. Brawer, and summarized the findings reached by Dr. Brawer at AR 22-23. Significantly, however, Dr. Brawer, while finding that Plaintiff "may have mild limitations in sustaining cooperative relationships with coworkers and supervisors [and] may function most optimally in a semi-isolated work setting." (AR 583.) If these findings are taken at face value, it may very well be that the occupational base would be eroded, which is not something that is sufficiently accounted for by simply limiting Plaintiff to unskilled work.

Based on the foregoing analysis, the Court concludes that the ALJ should have called upon the assistance of VE to determine the nature and extent of any erosion of the occupational base based on Plaintiff's non-exertional mental limitations. Simply to rely upon the Grids as a "framework for decision making" was inadequate and incorrect, and mandates remand for further hearing.

## IV

## ON REMAND, PLAINTIFF'S CREDIBILITY AS TO SUBJECTIVE SYMPTOMS WILL BE EVALUATED DE NOVO

Plaintiff's fourth issue is that the ALJ committed legal error in failing to properly consider his testimony as to subjective symptoms. In the hearing, as well summarized in the JS by Plaintiff's counsel, Plaintiff testified that he has trouble remembering things because of medication; that he has back and right knee pain; that he had problems with one of his hands falling asleep; that he had right shoulder problems for about the last year; that his back pain increases with sitting and standing; that he could only stand 20 to 30 minutes at a time; that he cannot sleep at night because of back pain; that the right knee problem started about two years ago; that he can walk about 20 to 30 minutes because of pain; that he had been offered surgery but declined because he is afraid to be in a wheelchair; that he can sit for only about 30 minutes because of increasing back pain; that he would need to lie down during an eight-hour period because of pain. (See, generally, AR 97-116.)

The ALJ depreciated or rejected Plaintiff's credibility with regard to these subjective complaints for several reasons. First, that Plaintiff had only had conservative treatment and no surgery. (AR 25.)

But, as Plaintiff's counsel points out, surgery was not required, and Plaintiff indicated he declined surgery because he was afraid to be in a wheelchair. Further, the Agreed Medical Examiner did leave open the possibility of back surgery in 2006, suggesting that there might be a need for this in the future.

The ALJ further rejected Plaintiff's testimony as to his mental conditions, finding that they are "mild, stable and controlled." This is not valid as a reason, because indeed, the ALJ did find there to be severe mental impairments which would restrict Plaintiff to simple and repetitive tasks.

The ALJ further indicated that Plaintiff had no significant x-rays or imaging studies and no indication of any neurological deficits, and further, that the MRI shows improvement. As the Court has previously indicated, there are records showing an improvement with regard to disk bulge, but the other reasons cited are not generally supportable.

All in all, the ALJ must provide evidence of clear and convincing reasons to reject these pain allegations. Benson v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). A lack of objective support for pain complaints is only one reason which may be relied upon, but cannot be exclusive.

Based on the foregoing, on remand, Plaintiff's credibility will be redetermined de novo.

The Court will only briefly touch upon Plaintiff's fifth issue, which is that the ALJ failed to properly consider his ability to read and write English. This issue largely relies upon an acceptance of Dr. Pospisil's conclusion that Plaintiff in only capable of sedentary work. On the other hand, while the ALJ found that Plaintiff is capable

of light work, the Court has already found that it was error for the ALJ to rely upon the Grids. Consequently, it is not necessary for the Court to make a determination at this point, since the matter will be remanded for a new hearing.

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**


DATED: April 16, 2014                            /s/
                                        VICTOR B. KENTON
                                        UNITED STATES MAGISTRATE JUDGE